UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Walter D. Catton, Jr. | ) |
| | ) |
| David M. Nickless, Trustee, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | )    Civil No. 15-40044-LTS |
| | ) |
| Walter D. Catton, Jr. | ) |
| | ) |
| Appellee. | ) |

ORDER ON BANKRUPTCY APPEAL

November 17, 2015

SOROKIN, J.

Appellant, Trustee David M. Nickless ("Nickless"), appeals "the Order of the Bankruptcy Court entered on March 5, 2015 overruling the Trustee's Objection to the Debtor's Claim of a Homestead Exemption."  Doc. No. 1; see Doc. No. 1-1 (the Bankruptcy Court's order).  After Nickless filed his brief, Doc. No. 11, Appellant, debtor Walter D. Catton, Jr., filed a brief opposing the appeal, Doc. No. 13, to which Nickless filed a reply brief.  Doc. No. 14.  After careful consideration of the parties' briefs and arguments, the Court DENIES Nickless's appeal.[1]

I.      BACKGROUND

       A.      Facts

_____

[1] The Court sees no need for oral argument in this matter.  In accordance with Fed. R. Bankr. P. 8019(b)(3), the Court finds that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."

The Court draws this recitation of facts primarily from the "Joint Agreed Statement of Facts" that the parties submitted to the Bankruptcy Judge in the course of litigating this objection.  See Doc. No. 12 at 111-113 ("JSAF").  On June 29, 2014, Catton filed a voluntary Chapter 7 petition for bankruptcy.  Id. ¶ 10.  Two days prior, on June 27, he filed, pursuant to Mass. Gen. Laws ch. 88, a Declaration of Homestead on his primary residence, located at 185 Westford Street, Lowell, Massachusetts ("The Property").  Id. ¶¶ 10, 11.

Catton purchased the Property in 1981, and has used it as his "sole and exclusive residence" since that time.  Id. ¶ 2.  It is a two-story building, with Catton's insurance business housed on the first floor, and his living quarters on the second.  Id. ¶ 3.  The Property is in an Urban Single Family ("USF") zone that is about one city block in size.  Id. ¶ 4.  "The zone is surrounded by an Urban Multi-family (UMF) zone with Traditional Neighborhood Two family (TTF), Neighborhood Business District (NBF), Traditional Neighborhood Multi-family (TMF) and [T]raditional Mixed Use (TMU) districts all within a few blocks of the [Property]."  Id. USFs allow "as of right 'a home occupation that is conducted solely by the occupant' 'in a building that does not exhibit any exterior indication, including signs, of its presence or any variation from residential appearance.'"  Id. ¶ 5 (citing "Sections 4.3.3 and 4.3.4 of City of Lowell Zoning Ordinance").  With a permit, USFs can also display a sign or name plate, and may contain three additional employees beyond the resident.  Id.

The Property has such a sign on the front façade, stating "Catton Insurance Agency." Id. ¶ 6.  Each level also has its own entranceway.  Id.  The City of Lowell's ("Lowell") assessor's website describes the Property as an office and "having a style of 'Stores/Apt Com.'" Id. ¶ 7.  The website also lists the total living area as 2,313 out 3,762 gross square feet.  Id. Lowell taxes the Property at a rate of approximately $23.45 per thousand dollars of valuation,

halfway between the $15.14 and $31.75 per thousand dollars of valuation rates it uses for residential and business properties, respectively. Id. ¶ 8. On November 21, 2013, Thomas E. Brown of Brown Associates appraised the Property and "described [it] as a two unit mixed use property that has typical utility and appeal for the immediate market area." Id. ¶ 9.

During the year 2014, Catton, per his Schedule I, had only one source of employment income—he earned $3,752.00, $569 per month, from Lowell for working as a crossing guard during the school year. Doc. No. 12 at 19, 23. He also received, per month, $1,932 from Social Security, a $135 pension from Metropolitan Life Insurance Co. ("Met Life"), and $296 in residual commissions from Liberty Mutual Group, Inc ("Liberty Mutual"). Id. at 19, 23, 24. Catton's Statement of Financial Affairs ("SFA") indicates $1200.00 in residual commission from Picken Insurance Agency ("Picken") in 2012, and $19,999.14 from Liberty Mutual that same year. Id. at 23. In 2013, those numbers were $1,479.83 and $15,737.13, respectively. Id. Catton's SFA lists no income from either of these sources in 2014. Id.

B.    Procedural Posture

After Catton claimed an exemption for the Property, see Doc. No. 12 at 12 (listing the Property as one of several properties Catton claimed as exempt on his Schedule C), Nickless objected, on August 13, 2014, to that exemption, asserting that the Property was "a mixed use structure." Id. at 38-39. After the parties fully briefed the issue before the Bankruptcy Court, see id. at 38-48, 68-140, that Court, on October 2, 2014, held a hearing on the objection, see id. at 49-66 (hearing transcript), and, on March 5, 2015, issued a "Memorandum of Decision and

Order on Trustee's Objection to Homestead Exemption." Id. at 141-47. The Order overruled Nickless's objection.[2]

Nickless timely filed this appeal on March 12, 2015. Doc. No. 1; see Fed. R. Bankr. P. 8002(a)(1) ("Except [for irrelevant scenarios], a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."). Nickless filed his Appellant's Brief on May 22, 2015, Doc. No. 11, Catton his Appellee's Brief on June 8, 2015, Doc. No. 13, and Nickless his Reply Brief on June 22, 2015. Doc. No. 14.

## II.   LEGAL STANDARD

"[W]hen a party chooses to appeal a bankruptcy court's decision to the district court pursuant to 28 U.S.C. §158(a), the district court reviews the bankruptcy court's conclusions of law de novo." Davis v. Cox, 356 F.3d 76, 82 (1st Cir. 2004). However, the Bankruptcy Court's findings of fact will not be set aside "unless clearly erroneous." In re Tully, 818 F.2d 106, 108 (1st Cir. 1987); 28 U.S.C. § 2075 ("Findings of fact [by the bankruptcy court] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"). The Court reviews the Bankruptcy Court's resolution of mixed questions of law and fact "for clear error unless its analysis was 'infected by legal error.'" In re SW Boston Hotel Venture, LLC, 748 F.3d 393, 402 (1st Cir. 2014) (quoting In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 73 (1st Cir. 1995)).

"The bankruptcy court findings will be considered clearly erroneous if, after a review of the entire record, we are left with the definite and firm conviction that a mistake has been committed." In re R&R Assocs. of Hampton, 402 F.3d 257, 264 (1st Cir. 2005) (emphasis

---

[2] Because Nickless challenges a final order, this Court has jurisdiction to hear the appeal. See 28 U.S.C. § 158(a)(1).

added).  If two views of the evidence are possible, the trial judge's choice between them cannot

be clearly erroneous.  Williams v. Poulous, 11 F.3d 271, 278 (1st Cir. 1993).  As the Supreme

Court explained:

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources.

Anderson v. Bressemer City, N.C., 470 U.S. 564, 574-75 (1985).

## III.   DISCUSSION

Nickless's appeal fundamentally centers around one question—did the Bankruptcy Court

properly overrule his objection to Catton's claim of exemption for the Property?  The

Bankruptcy Court relied on two premises in its ruling.  First, it held that the mere fact that a

property is not used exclusively as a residence does not preclude such property from being a

single-family dwelling for exemption purposes.  Second, it decided that the Property's

predominant purpose was residential.  The Court reviews each of these premises in turn.

### A.   Need for Exclusively Residential Usage

Under the Massachusetts Homestead Act, "[t]he estate of homestead of each owner who

is . . . elderly . . . shall be protected . . . against attachment, seizure, execution on judgment, levy

and sale for payment of debts and legacies, except as provided [elsewhere], to the extent of the

declared homestead exemption."  Mass. Gen. Laws ch. 188 § 2(a).  This exemption applied to

qualified homeowners, "upon recording of an elderly or disabled person's declaration of

homestead protection."  Id.  Any person sixty-two years of age or older is elderly.  Mass. Gen.

Laws ch. 188 § 1.

The statute defines the word "home" as:

the aggregate of: (1) any of the following: (i) a single-family dwelling, including accessory structures appurtenant thereto and the land on which it is located; (ii) a 2 to 4-family dwelling, including accessory structures appurtenant thereto and the land on which it is located; (iii) a manufactured home as defined [elsewhere]; (iv) a unit in a condominium, as those terms are defined [elsewhere], that is used for residential purposes; or (v) a residential cooperative housing unit established pursuant to [other chapters]; (2) the sale proceeds as provided in [§ 11(a)(1)]; and (3) the proceeds of any policy of insurance insuring the home against fire or other casualty loss as provided in [§ 11(a)(2)].

Id.  The statute does not further define either "single-family dwelling" or "dwelling."  The Court evaluates the Property as of the date Catton filed his petition to determine if it receives an exemption.  See 11 U.S.C. § 522(b)(3)(A); see also In re Webber, 278 B.R. 294, 296 (Bankr. D. Mass. 2002) ("The Debtor's right to or eligibility for a particular exemption is fixed and determined as of the date of his bankruptcy petition.")

Neither party disputes that Catton is elderly, or that he followed the requisite procedures for declaring homestead protection.  Rather, the core disagreement is whether or not the Property is a single-family dwelling.  Nickless argues that since the Property has mixed uses, it cannot be a single-family dwelling.  See, e.g., Doc. No. 11 at 8 ("The plain, unambiguous, and all-inclusive definition of 'home' in the Homestead Act as rewritten in 2010, does not include a single mixed-use building.").  Catton thinks such exclusivity is unnecessary.  See Doc. No. 13 at 20.  Because the Bankruptcy Court's holding that exclusively residential usage is not required for property to constitute a dwelling is a legal conclusion, this Court reviews that aspect of the ruling de novo.

In asserting that a mixed-use building cannot be a single-family dwelling, Nickless emphasizes that the Homestead Act enumerated five structures that warrant classification as a home, and that mixed-use structures are not on that list.  See Doc. No. 11 at 9.  Because the Property is mixed-use, Nickless reasons, Catton cannot successfully claim an exemption.  While

Nickless's first point (about mixed-use buildings not being in the enumerated quintet) is true as far as it goes, it does not go as far as Nickless hopes.

Nothing in the statute's language precludes a mixed-use building from being a <u>single-family dwelling</u>, a category clearly on the statutory list.  Nickless cites neither case nor statutory authority for that proposition.  Further, when "construing a statute, where a word is commonly understood, it can be given its ordinary meaning," <u>Meshna v. Scrivanos</u>, 27 N.E.3d 1253, 1258 (Mass. 2015) (internal quotations and citations omitted), and nothing about the ordinary meaning of dwelling, "a shelter (as a house) in which people live," Merriam-Webster's Collegiate Dictionary 389 (11th ed. 2005), supports a categorical bar on mixed-use facilities.

Common sense buttresses the Bankruptcy Court's interpretation.  Many people perform work from their home, some out of a so-called "study," others at the dining room table, and still others in particular areas designed for receiving clients or patients.  It belies common understanding to not consider these houses single-family dwellings, yet Nickless's construction compels that result.  Many children experience their first lesson in entrepreneurship through selling lemonade in their yard during hot summer days—under Nickless's reading, such a lemonade stand would arguably strip its operators' residence of dwelling status.  And if a homeowner in Foxborough were to rent out her driveway to Patriots fans on Gillette Stadium game-days, or her teenage daughter operated a lawn mowing and shoveling service out of the home year-round, it defies intuition to think she no longer lives in a single-family dwelling, yet Nickless's interpretation would make it so.

Given both this backdrop, and the Massachusetts Supreme Judicial Court's admonition, "[i]n light of the public policy and the purpose of the [Homestead Act], . . . [to] construe[] the State homestead exemptions liberally in favor of debtors," <u>Shamban v. Masidlover</u>, 705 N.E.2d

1136, 1138 (Mass. 1999), the Court holds that the mere use of a residence for non-residential purposes, at least when the predominant purpose is residential, does not, by itself, preclude an exemption for the Property.[3]

B.     The Property's Predominant Purpose

In addition to his legal argument, Nickless also asserts that the Bankruptcy Court incorrectly found that the Property's residential portion exceeds the size of the commercial portion.  See Doc. No. 11 at 10-13.  The Bankruptcy Court came to this conclusion in large part because "out of the 3,762 total square feet of interior space in the property, 2,313 square feet (61.5%) represents living area."  Doc. No. 12 at 145.  Nickless first argues that the Bankruptcy Court misunderstood what the term "living area" means.  Doc. No. 11 at 17.  Instead of meaning residential living space, Nickless contends that "living area" refers to "the total amount of space which can be occupied in that building as of the time the record was created, by any lawful occupant."  Id.  Next, he claims that in light of this misunderstanding, Catton "proffered no evidence to demonstrate the total space comprising [his] apartment, or that it exceeded the space occupied by [his] insurance agency."  Id. at 18.  Accordingly, Nickless reasons, "absent unequivocal evidence that the second floor was larger than the first floor, [Catton's] claim of exemption must fail."  Id. at 19.[4]

Even assuming that the Bankruptcy Court was clearly erroneous in using the relative sizes of living and gross areas to determine the Property's predominant purpose, and assuming,

---

[3] The Court does not attempt to posit how much non-residential use is required to strip a residence of its dwelling status, as long as the residential use predominates.  This holding simply rejects the proposition that any non-residential use does so.

[4] Although "the objecting party has the burden of proving that the exemptions are not properly claimed," Fed. R. Bankr. P. 4003(c), once the objecting party produces evidence rebutting the exemption, the burden of production shifts to the debtor to show why the exemption is proper.  In re Plant, 503 B.R. 224, 229 (Bankr. D. Mass. 2013).

without deciding, that Nickless proffered sufficient evidence to shift the burden of production to Catton, the record indicates sufficient grounds for affirmance.  See In re R&R Assocs., 402 F.3d at 264 (noting that courts deciding Bankruptcy Court findings on appeal must "review the entire record") (emphasis added).  Put another way, the record indicates that the Bankruptcy Court's ultimate factual finding, that the Property's predominant purpose was residential, was not clearly erroneous.

Most importantly, Catton received almost no money from insurance sales in the recent past.  In 2014, he received residual commissions worth $296 per month.  Doc. No. 12 at 19, 23, 24.  In the three months he did not work as a crossing guard, this insurance income (which derived solely from renewal of past sales) amounted to approximately one-eighth of his monthly income.[5]  Because Catton's insurance business nets him very little money, in both an absolute and relative sense, and none of that money from the last year came from any new sales, the record shows that Catton made little, if any, use of the Property's commercial component.

Catton's declining income bolsters this finding.  He received $21,999.14 in cumulative residual commissions in 2012, a figure that dropped to $17,216.96 the next year.  Id. at 23. Further, Catton's SAF lists no insurance income for 2014 thus far.  Id.  This state of affairs makes sense, given that 2014 was the year he declared bankruptcy.  Both Catton's general paucity of income, and its continued decline, further demonstrate that the Property served primarily as Catton's residence, especially at the legally relevant time—the date Catton filed his petition.

---

[5] This proportion drops even more, to just over one-tenth, during the nine months Catton does work as a crossing guard.

Still more facts buttress the Bankruptcy Court's finding.  Catton lived at the Property for over three decades.  JSAF ¶ 2.  And the Property is in an Urban Single Family Zone, which generally includes only homes.  Id. ¶ 4, 5.  Additionally, the fact that Lowell's Zoning Ordinance allows USFs, with a special permit that Catton had obtained, to contain home occupations, underscores the absence of the purity requirement that Nickless posits.  Id. ¶ 5.  Further, Lowell's taxation of the Property at a rate exactly halfway between the residential and business rates, id. ¶ 8, points towards the Property being closer to a pure mixed-use facility than Catton asserts, but does not demonstrate that the commercial purpose predominates.  Finally, the fact that Lowell's assessor's website describes the Property as an office in the "Stores/Apt Com." style, see JSAF ¶ 7, does not defeat Catton's argument because, at most, it simply is evidence that the property has mixed uses, and that the assessor felt the office predominated.

Against the backdrop of the Supreme Court's admonition that an appellate court cannot reverse the factfinder's determinations even if "convinced that had it been sitting as the trier of fact, it would have weighted the evidence differently," Anderson, 470 U.S. at 574, the Court cannot hold that the Bankruptcy Court's finding that the residential purpose of the Property predominated was clearly erroneous.

IV.    CONCLUSION

For the reasons stated above, Nickless's appeal (Doc. No. 1) is DENIED.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge